## Department of Public Assistance v. DeCarli

*William F. Farrell*, for plaintiff.

*H. D. Carey*, for defendant.

LEACH, P. J., December 19, 1941.—At the trial of plaintiff's claim for reimbursement for assistance amounting to $195.30 rendered to defendant and her children during the lifetime of her husband, it appeared that defendant and her husband were owners of an estate by entireties. Defendant's husband died without leaving property sufficient for his burial. Defendant contradicted the statement of the authorities that she had personally applied for a portion of the relief during

her husband's illness. On the above state of facts binding instructions were given in favor of plaintiff for $195.30.

Counsel for defendant cites abundant authority for the fact that the husband is primarily liable for the support of the family, and that no lien or obligation of the husband follows an estate by entireties and is collectible from the wife when she acquires such an estate by the death of the husband. He further complains that her denial that she had ever applied for relief is a question of fact for the jury. As there can be no dispute that defendant and her children received the relief, the trial judge held such disputed fact was immaterial.

Counsel for plaintiff, in an excellent brief, sets forth that the Relief Acts and The Support Law of June 24, 1937, P. L. 2045, make a mother liable for any relief granted to herself and her children; further, that the real and personal property of a person is liable to the Commonwealth if the right to ownership of such property existed or was acquired during the time such expenses were incurred.

A payer is entitled to restitution where another person should have paid the debt, whether the other person is primarily or secondarily liable in the first instance for the payment.

We adopt the brief of law of the learned counsel for plaintiff and cite it in full in support of the opinion of the court in this case:

"Defendant's defense to plaintiff's claim for reimbursement for that portion of the assistance payments granted for her support and that of her dependent children rests on two legal propositions.

"First—That since all assistance checks in the case were made payable to her husband, Joseph DeCarli, and not to her; and since (as she alleges) she made no application for assistance she cannot be held liable for that portion of the expense incurred by the plaintiff for her assistance and support but that her husband, the

payee, is liable under 'The Support Law' for the expenditures made by plaintiff.

"Disposing of this first proposition before proceeding to the next, it is well established that under The Support Law the property of every public assistance recipient is liable for the expense of his or her own assistance and support, regardless of who makes application for the same, and without regard to whom such payments are made. The language of the act makes the fact of 'expenses incurred', rather than the identity of applicant or payee, the criterion of liability.

"Section 4 of the Act of June 24, 1937, P. L. 2045, as amended by the Act of June 9, 1939, P. L. 310, reads as follows:

" 'Property of Indigent Persons Liable for Expenses Incurred for Support and Assistance—(a) The real and personal property of any indigent person *shall be liable for the expenses of his support, maintenance, assistance and burial, incurred by any public body or public agency*, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred. Any public body or public agency may sue for moneys so expended, and any judgment obtained shall be a lien upon the real estate of such indigent person, and be collected as other judgments, except as to the real and personal property comprising the home and furnishings of such indigent person, which home shall be subject to the lien of such judgment but shall not be subject to execution on such judgment during the lifetime of the indigent person, surviving spouse, or dependent children.'

"That a public assistance beneficiary may be held liable for his or her share of a payment made to another was decided in the case of Commonwealth v. York Trust Co., Guardian, 37 D. & C. 711, where the estate of a minor was held liable for such proportionate share of public assistance funds received by the minor's mother

for support of herself and minor children, as was expended for the maintenance and support of the minor, where the court said, p. 715:

" 'Admitting that no part of the money in question was physically delivered to defendant, who at the time was a minor under 16 years of age, it follows that if the said defendant received the benefit incident to the expenditure of such money, and that such benefit consisted of her maintenance by virtue of such public assistance, the law implies an obligation to repay the State. The legislature did not intend to grant bounties to any of its citizens. Its intent was to provide assistance where there existed no other adequate means of support.'

"Therefore, it seems that there can be no doubt as to the defendant's liability for that portion of the total assistance payments expended by the plaintiff for her individual assistance and support, whether or not she signed an application and regardless of the fact that another member of the family, in this case her husband, was the designated payee on the assistance checks. The designation of one person as the payee in a grant intended for the joint benefit of a group is a matter of choice and practical administration of the assistance laws by the plaintiff and cannot be construed as limiting the benefits and resulting reimbursement liability to such payee.

"Therefore, the 'conflict of evidence' cited by defendant as the fifth reason for a new trial was a conflict on an immaterial fact. Defendant's liability was not contingent on her signing an application for assistance but arises from the fact that she was the beneficiary of assistance payments made by plaintiff.

"The defendant's signed application was intended and offered in evidence to corroborate other substantial uncontradicted evidence of the fact that the assistance payments were intended, authorized and expended, for the joint support of the defendant, her spouse, Joseph DeCarli, and their dependent children, by the plaintiff.

"Wherefore, the rule for new trial should be dismissed.

"Second—The other question of law involved in this action is the liability of a mother to reimburse the public agency for money expended by it for the support and maintenance of her dependent children, where the assistance payments were made to the father, since deceased, for the joint support and maintenance of both parents and their dependent children.

"It is plaintiff's position that while there is a common-law and natural obligation upon both parents to provide for the support of their children as between these parents and the rest of the world a primary obligation to support their children is specifically created by section 3 of The Support Law of 1937, which reads as follows:

" 'The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct.'

"It is the contention of the plaintiff that this act places a primary obligation upon the mother to support her children and only a secondary obligation rests upon the Commonwealth; the Commonwealth therefore is entitled to be reimbursed for support supplied for the benefit of her children from the mother's property. This rule applies even though, as between father and mother, the former may be primarily liable.

"This position is supported by the 'Restatement of the Law on Restitution', secs. 76, 113, and 114, stated as follows:

"Section 76—'A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the

other, unless the payor is barred by the wrongful nature of his conduct.'

"(*b*) 'The rule stated in this Section applies where two or more persons are subject to a duty to a third person either as joint promisors or otherwise, under such circumstances that one or more of them, as between themselves, should perform it rather than the other.'

"(*d*) (p. 338) 'Where there are several persons who, with respect to the payor, are under a prior duty of performance, the payor is entitled to restitution from any one of them for the entire amount he has paid. This is true both where all others are primarily liable and where some are secondarily liable . . .

" 'Where the obligation is joint and the death of the principal obligor terminates the claim of the creditor against his estate, the surviving secondary obligor remains liable and his payment to the creditor entitles him to indemnity from the decedent's estate.'

"Subdivision (*d*) last cited should dispose of the contention that since the father is primarily liable for the support of his children he alone is liable. As between them and a third party supplying such support they are both primarily liable.

"This is further supported by section 113 (*c*), second sentence:

" 'In some cases there may be two or more persons subject to a duty, as where by statute both parents of an illegitimate child are under a duty to provide for it. Where this is true, restitution can be properly sought from either person.'

"Another legal proposition raised by defendant is to the effect that liability under section 3 is contingent upon a court order for support. It has long been decided under acts almost identical with that of The '1937 Support Law', supra, that reimbursement liability is not contingent upon such a support order although the act creating the obligation to support provides for enforcement by such an order of court.

"As stated in the case of Harnish's Estate, 36 Lanc. 50, decided under the Act of June 13, 1836, P. L. 547, without such order the amount of liability is merely undetermined and may be determined by the court hearing the claim, in the cited case the orphans' court.

"The courts have also decided under the Act of June 1, 1915, P. L. 661, which is almost identical in that it provides for a 'court order', that lack of such order does not preclude reimbursement by the Commonwealth from the estate of a mother for maintenance supplied her insane son: Geisler's Estate, 76 Pa. Superior Ct. 560, In re Johanna Kersling, 12 D. & C. 309 (1928)."

Now, December 19, 1941, rules for new trial and for judgment n. o. v. are discharged.