## Department of Public Assistance v. Bauman

*Paul P. Wisler,* for plaintiff.

*Wallace M. Keely,* for defendant.

KNIGHT, P. J., March 3, 1943.—Sometime before February 2, 1939, Samuel Endy applied to the Department of Public Assistance, through its Montgomery County office, for public assistance. In his application he set forth as members of the family group requiring public aid: Himself, his wife, Florence

Endy, his eight children, and his father-in-law, Harry Bauman. On this application, signed only by Samuel Endy, the Department of Public Assistance paid to him, between February 8, 1939, and October 3, 1940, the sum of $915.58. This suit was brought by plaintiff, against Harry Bauman, to recover ten elevenths of the above sum, or $832.30.

On January 22, 1942, the case came on for trial, and a jury rendered a verdict in favor of the Commonwealth for the amount sued for. Motions for judgment n. o. v. and for a new trial were filed by defendant and argued before the court in banc. On April 21, 1942, the court handed down an opinion and order, directing that a new trial be granted, unless plaintiff would file a remittitur for all amounts of the verdict over $83.23. Plaintiff refused to file such remittitur, and the case again came on for trial on September 29 and 30, 1942. At this trial, the court directed a verdict for plaintiff, for $83.23, and plaintiff filed this motion.

The amount of the directed verdict represents one eleventh of the total assistance paid to the family of Samuel Endy, which included defendant. The trial judge took the view that defendant was only liable in this action for the amount of assistance received by him, or $83.23. Plaintiff contends that he is also liable for the assistance given his daughter, Mrs. Endy, and his eight grandchildren.

Plaintiff's statement of claim declares:

"Wherefor under section 4 of the Act of June 24, 1937, P. L. 2045, No. 297, known as the 'Support Law' the plaintiff demands judgment against defendant for the sum of Eight hundred thirty two dollars thirty cents."

Section 4 of The Support Law, as amended June 9, 1939, P. L. 310, provides:

"(a) The real and personal property of *any indigent person* shall be liable for the expenses of *his*

support, maintenance, assistance and burial, incurred by any public body or public agency, if such property was owned during the time such expenses were incurred, or if the right to ownership of such property existed or was acquired during the time such expenses were incurred. Any public body or public agency may sue for moneys so expended, and any judgment obtained shall be a lien upon the real estate of *such indigent person*, and be collected as other judgments . . ." (Italics supplied.)

It would seem that the very provisions of the law, upon which plaintiff bases its claim, limit the liability of defendant to the expenses of his own support. Plaintiff contends, however, that under section 3 of The Support Law of June 24, 1937, P. L. 2045, defendant is liable for the assistance granted to his daughter, Mrs. Endy, and his eight grandchildren, and that suit may be brought directly for the amount in the common pleas court.

The relevant portions of section 3 read as follows:

"(*a*) The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct;

"(*b*) The courts shall have power to hear, determine and make orders and decrees in such cases upon the petition of such indigent person, or of any other person, or any public body or public agency having any interest in the care, maintenance or assistance of such indigent person."

Section 2 of the act declares:

"The word court, as used in this act, shall be construed to mean the court of quarter sessions of the peace of any county, the family court of Philadelphia, and the county court of Allegheny County."

It will be seen, therefore, that the very section which imposes liability on defendant for the support of his daughter and grandchildren also provides for the procedure to enforce the support, namely, by an order or decree in the court of quarter sessions. Nowhere can we find in the act itself express authority to recover by suit in the common pleas from those liable for support by section 3 of the act. Section 4 does give express authority to public agencies to sue an indigent person, and to recover from *his* property moneys expended for *his* support.

In the brief of counsel for plaintiff, it is stated:

"Under acts almost identical with that of the 1937 Support Law, it has been decided that reimbursement liability is not contingent upon a support order although the act creating the obligation to support provides for enforcements by such an order of court."

This is true, and it becomes necessary to examine the cases cited by plaintiff in support of the statement, as well as others which we have found.

The earliest case seems to be Wertz v. Blair County, 66 Pa. 18 (1870). In that case suit was brought by Blair County to recover from defendant the amount paid by plaintiff to a State institution for the support of an insane son of defendant. A verdict and judgment was obtained in the common pleas for the amount expended by the county. On appeal the Supreme Court held that, under the Act of April 15, 1857, P. L. 191, the court of quarter sessions has power to hear and determine and make orders and decrees in all cases arising under section 28 of the Act of June 13, 1836, P. L. 539, with or without an order of relief having been first obtained. Section 28 of the Act of 1836 has about the same provisions as section 3 of the Act of 1937.

It is interesting to note that the Supreme Court, in its opinion, states as a fact that defendant "is of suffi-

cient ability to maintain his insane son". The court reversed the judgment of the lower court on the ground that exclusive jurisdiction was in the court of quarter sessions.

There is also a long line of cases in which the estates of indigent or insane persons have been held liable for the support furnished the indigent person by public agencies. Some of these cases are Directors of the Poor, etc., v. Nyce, 161 Pa. 82, Boles' Estate, 316 Pa. 179, Waits' Estate, 336 Pa. 151, and Reiver's Estate, 343 Pa. 137.

These cases all support the position of the trial judge that defendant was liable for the public assistance extended to him.

We now turn to the cases in which the courts have held the named relatives of indigent persons liable for the public assistance extended the indigent person.

Harnish's Estate, 268 Pa. 128, involved a claim by the Commonwealth against the estate of a father, for the maintenance of his insane son in a State institution. The claim was allowed in the orphans' court, although no adjudication of the liability of the father for the support of his son had been made by the court of common pleas prior to the death of the father. The lower court was affirmed. It is to be noted that this case arose under the Act of June 1, 1915, P. L. 661, which applies only to the indigent insane.

It is also to be noted that the claim was against an estate and not a living person. It seems to us this makes a great difference. The financial ability of the relative to help maintain the indigent person does not enter into the picture.

Geisler's Estate, 76 Pa. Superior Ct. 560, also involved the claim of the Commonwealth and the Allegheny County Home to be reimbursed by the estate of a mother for the maintenance of her insane adult son in a State institution. The case also arose under the

Act of 1915. The claim was also allowed, although no claim was ever made against decedent in her lifetime, and no order secured in the court of common pleas. Our observations as to Harnish's Estate, supra, apply equally to this case.

In Department of Public Assistance v. DeCarli, 44 D. & C. 291, 295, suit was brought against a mother for public assistance rendered to herself and her minor children. Binding instructions were given for plaintiff. Motions for a new trial and judgment n. o. v. were overruled in an opinion by Leach, P. J. There was no doubt of the liability of the mother for her own assistance, but when it came to the liability of the mother for the assistance rendered her children Judge Leach holds, quoting from the brief of the Commonwealth:

"It is the contention of the plaintiff that this act places a primary obligation upon the mother to support her children and only a secondary obligation rests upon the Commonwealth; the Commonwealth therefore is entitled to be reimbursed for support supplied for the benefit of her children from the mother's property. This rule applies even though, as between father and mother, the former may be primarily liable.

"This position is supported by the 'Restatement of the Law of Restitution', secs. 76, 113, and 114, stated as follows:

"Section 76—'A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.' "

This is good law, but it entirely ignores the condition upon which the liability of the relatives named in section 3 of the Act of 1937 is based, namely, that they are liable only "if of sufficient financial ability".

If the position of the Commonwealth is correct, it can elect in any case to proceed by an order in the quarter sessions, or sue the named relative in the common pleas for the entire amount of assistance granted an indigent person. We do not think the legislature in the Act of 1937 contemplated or intended such a result. Surely it is not economically or socially sound to pauperize one person in order to relieve another.

It is argued that the Act of June 9, 1939, P. L. 310, prevents such a result, when it provides that the real and personal property of the *indigent person*, comprising his home and house furnishings, shall not be seized in execution of any judgment obtained by the Commonwealth during the lifetime of the indigent, his surviving spouse, or dependent children. It is a sufficient answer to this argument to point out that the protection of the Act of 1939 applies only to the property of the "indigent person" and not to that of a named relative who may be liable.

A brief recital of the facts of this case, as gathered from the evidence produced by plaintiff, will show how inequitably plaintiff's contention would work out.

Defendant is a man 70 years of age and unemployed. His entire estate consists of a house in Boyertown, worth about three thousand dollars, which he rents, and a mortgage on the home of his son-in-law, Samuel Endy, with whom he lives. He receives no interest on the mortgage, and uses all his small income to help his daughter and eight grandchildren. The assistance for which plaintiff seeks reimbursement was extended over a period of 19 months, or an average of $43.80 per month. No court would impose an order such as this, on a 70-year-old man, with an income of not more than $25 per month. An order of $6 per week on a grandfather with an income of $500 per annum

has been held unreasonable: Commonwealth ex rel. v. Wolodarsky, 90 Pa. Superior Ct. 531.

We have arrived at the conclusion that when the liability of the relatives named in section 3 of the Act of 1937 is sought to be enforced against living persons, it may be done only by the method provided in the act, namely, an order or decree in the court of quarter sessions.

And now, March 3, 1943, the motion for judgment n. o. v. is overruled.