## Snyder Estate

*Joseph V. Furlong, Jr.*, for accountant.

*Harry L. Kaufman* and *Francis H. Fitzpatrick*, for the Commonwealth.

SAYLOR, J., January 7, 1965.—Elsie D. Snyder died August 26, 1963, survived by no spouse but by three sons: Francis E., Eldon R. and Russell T. Newmeyer, and one daughter, Doris E. Salmons. She left a will, duly probated, by which she gave her entire estate to her four children above named in equal shares. She appointed her daughter, named in the will as Doris E. Brill, executrix and guardian of the share of her son, Francis.

Letters Testamentary were granted to Doris E. Salmons on October 2, 1963, and proof of advertisement of notice thereof was submitted to me and is hereto annexed.

It is recited in the statement of facts submitted at the audit that Doris E. Salmons died December 26,

1963, and Letters of Administration c. t. a. on her estate were granted to Robert J. Salmons on January 9, 1963, by the Register of Wills of Philadelphia County.

Letters of Administration d. b. n. c. t. a. on the present estate were granted to Russell T. Newmeyer on January 22, 1964. In such capacity he has stated the account. The account should properly have been stated by the personal representative of the deceased executrix.

No transfer inheritance tax has been paid.

*Claim of the Commonwealth*

The Commonwealth of Pennsylvania claims the sum of $24,905.55 for maintenance at Farview State Hospital of Francis E. Newmeyer, a son of decedent, from March 13, 1937, to August 26, 1963, with interest. The estate contests the claim except to the extent that the ward is entitled to distribution as an heir to one-fourth of the net estate.

Francis E. Newmeyer was committed to Farview by order of McDevitt, J., of the Quarter Sessions Court of Philadelphia County, dated January 27, 1937, "as an insane patient at the expense of the County of Philadelphia." Newmeyer has been detained, treated and maintained at Fairview since March 13, 1937.

The estate contends that the Commonwealth should have proceeded against the County of Philadelphia to collect maintenance charges and in turn against the father of the ward and should have exhausted its claims against them before attempting to collect from the mother's estate.

The Act of June 1, 1915, P. L. 661, 71 PS §1781, provides in section 3 as follows:

"The husband, wife, father, mother, child or children of any person who is an inmate of any asylum, hospital, home or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the

maintenance of any such person, as hereinafter provided."

Farview State Hospital was established in 1905 when there was in effect the common law liability of the estate of a lunatic for his maintenance. This placed the liability for maintenance on the affected person's county or poor district. Legislation thereafter effective covered patients awaiting trial for criminal offenses or under sentence. Then came the several Mental Health Acts including the most recent, that of 1951, which became effective January 1, 1952. It is agreed that none of this legislation changed the law making either a patient's estate liable for his maintenance or those relatives deemed "legally liable."

The estate contends that as at common law the indigent insane person, and in turn the father, was responsible for his care and maintenance, the extension of the responsibility by the Act of 1915 is recognized as being in derogation of the common law and therefore that act must be strictly construed in the light of the presumption that no change in the common law was intended beyond what is expressly stated: Boles' Estate, 316 Pa. 179 (1934). Consequently, in that case the obligation of the insane person to pay for his support continued in effect and was primary to the obligation imposed upon the father by the Act of 1915. That is no less than the Commonwealth seeks to do here.

In Low Estate, 15 D. & C. 2d 375 (1957), it was held that, under the Act of 1915 and the Mental Health Act of 1923, the estate of the deceased father of an incompetent daughter was liable for the balance due on account of her past maintenance even though the Commonwealth never moved to have the contributions made by the father from time to time increased during his lifetime.

In Hoke Estate, 26 D. & C. 2d 601 (1961), the court denied to the Commonwealth recovery from the estate

of a mental patient for his maintenance at a State hospital. The patient was under indictment and awaiting sentence when committed to the hospital at the expense of the Commonwealth. That case is not apposite here for two reasons: (1) Newmeyer, while under indictment, was never tried, and (2) there is here no order against the Commonwealth to maintain him. The Act of 1951 referred to and relied upon by the court in the Hoke case was not in effect when Newmeyer was committed to Fairview. Actually, the cost of his maintenance up to January 1, 1952, exceeds the amount distributable in the estate before the court.

In Brusbard's Estate, 34 D. & C. 107 (1938), it was held that, under the Mental Health Act of 1923, the expense of maintaining as a patient a sentenced criminal after the expiration of his sentence is properly chargeable against his estate, under section 503 of that act and the Act of June 13, 1836, P. L. 541. Hence, the Mental Health Act does not relieve the estate of an unsentenced patient, and in turn the estate of his mother, from liability for his maintenance.

In Commonwealth v. Evans, 253 Pa. 525 (1916), decided under much earlier acts providing for the support of lunatics, the State was permitted to recover from the guardian of the insane person who had been acquitted in a criminal case where it appeared that the estate was able to repay the cost of his maintenance.

In the instant case, while the Commonwealth under the terms of the order committing Newmeyer could proceed against the County of Philadelphia, which, in turn, following payment, could claim recovery from the mother's estate, such circuity of action is unnecessary: Andrews Estate, 88 D. & C. 583 (1954).

The fact that neither during the lifetime of Newmeyer's father nor during that of his mother was a claim for his maintenance made against either is no bar to the prosecution of the claim now against the es-

tate of the latter: Brubaker Estate, 346 Pa. 339 (1943).

Moreover, there has been produced no decision compelling this court to require that the Commonwealth, to collect its claim, must proceed in regular order against the ward, his father, his mother, etc., in the sequence of the relatives named in the Act of 1915. There has been submitted no argument that the legislature intended to require such a procedure. The law does not require the doing of a vain thing. Nor has it been established that the care of an insane person who has not been sentenced in a criminal court is any different from that of any other insane person who is maintained by the Commonwealth in one of its hospitals.

In Gellnek Estate, 75 D. & C. 219 (1951), where the facts are quite similar to those before this court, except that the patient's interest in his mother's estate was only a life tenancy, the court, following Commonwealth v. Zommick, 362 Pa. 299 (1949), held that the State could properly elect to proceed against the deceased mother's estate without first exhausting all efforts to discover and execute upon the inmate's own estate. This, for the very good reason that the Act of 1923, supra, was not intended to take away from the State any right conferred upon it by the Act of 1915.

In Commonwealth v. Zommick, supra, the court held that the only condition to the enforcement of the liability imposed by section 3 of the Act of 1915 is that the party charged, in this case the mother, is "legally able," citing Harnish's Estate, 268 Pa. 128 (1920).

Under the Act of 1915 the Commonwealth is entitled to recover from this estate the full amount of its claim before any distribution is made to other than creditors. Moreover, it is entitled to interest on its claim. As the two amounts make a total in excess of the balance for distribution shown by the account, the entire balance will be awarded to the Commonwealth.

The only asset accounted for is decedent's real estate, premises 258 Krams Avenue, Philadelphia, valued at $4,500. There was no objection to the account, which shows a balance of proceeds of sale of this real estate, $3,889.83, which is awarded to the Commonwealth of Pennsylvania on account of its claim, plus interest, for maintenance of decedent's son, Francis E. Newmeyer, also known as Frank Newmeyer, at Farview State Hospital, as hereinabove allowed.

And now, January 7, 1965, the account is confirmed nisi.